**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| _____ )<br>CHARLIE P. CARDOSO and )<br>MARIA C. CARDOSO, )<br>       )<br>     Plaintiff, )<br>       )<br>v. )<br>       )<br>BANK OF AMERICA )<br>and JOHN DOES 1-5, )<br>       )<br>     Defendants. )<br>_____) | C.A. No.  1:10 CV 10075-RGS |

**FIRST AMENDED COMPLAINT**

**<u>INTRODUCTION</u>**

1.     Mr. and Mrs. Cardoso, a Massachusetts couple with a second home in Spring Hill, Florida which they owned free and clear of any mortgage, and despite never having had a mortgage with Countrywide or Bank of America on their Florida home, learned on January 5, 2010 that their home had been foreclosed on by Bank of America.  Despite the homeowners and others telling Bank of America that it was foreclosing on the wrong house, Bank of America foreclosed anyway, intimidating the Cardoso's tenant into leaving the house, then seizing the house, changing all the locks and "trashing out" the house by throwing out the Cardoso's personal possessions that were stored in the house and garage.  To remedy the damage caused by the Defendants, Mr. and Mrs. Cardoso bring the following claims: 1) trespass; 2) conversion; 3) negligence; 4) the intentional infliction of emotional distress; 4) the negligent infliction of emotional distress 5) interference with contractual relations; 6) defamation 7) libel; 8) invasion of privacy; 9) violations of the Massachusetts civil rights act and 10) unfair and deceptive acts

and practices in violation of state consumer protection statutes.

## PARTIES

2.      The Plaintiffs, Charlie and Maria Cardoso are husband and wife who reside in

Massachusetts at 255 Heritage Drive, New Bedford, MA and own a second home at 9168

Geneva Street, Spring Hill, Florida.

3.      The defendant Bank of America ("BOA") is a corporation headquartered at Bank

of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina 28255.

4.      Defendants John Does 1-5 are the yet identified employees, agents, contractors or

other persons ordered, hired or told by BOA to trespass on the Plaintiff's property and to dispose

of the Plaintiff's personal possessions.

## JURISDICTION AND VENUE

5.      This court has jurisdiction pursuant to 28 U.S.C.S. §1332(a)(1) as there exists

diversity of all parties and the amount in controversy exceeds $75,000.  The Defendants, as BOA

or its employees and/or agents, have sufficient contacts with Massachusetts as it has a substantial

number of bank branches here and enters into a substantial number of loans in the

Commonwealth.

6.      Venue is properly laid as all Defendants directly and/or as agents, representatives

and/or employees of BOA do business in this jurisdiction or otherwise have substantial contacts

within this jurisdiction.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.      The Plaintiffs own their Spring Hill, Florida home free of any mortgages and

liens.  The street address of their Spring Hill, Florida home is 9168 Geneva Street.  Mr. Cardoso

is currently laid off from his job in the construction industry and his wife is disabled.  The Cardosos used their Florida home on occasion and rented it at other times.

8.      The Cardosos had family and friends in Spring Hill who they socialized with on a regular basis and who watched over their house for them.  The Cardosos paid a family friend, who lived near the house, to cut the grass and care for the house.

9.      At all times relevant to this case, the Cardosos had rented their home to a single mother with children.  The tenant had full use of the house.  The Cardosos had stored a number of personal possessions - such as clothes, small counter-top appliances, family photos, etc. – in the attic of the house.  Mr. Cardoso also had stored a substantial number of tools and other items in the garage and the screened in porch, including but not limited to various power tools (air compressor, nail gun, pneumatic stapler, cordless drill, cordless miter saw, bench router, belt sander, table saw, etc.) , a gas grill, a lawnmower, a shop vac, a household vacuum, two refrigerators, a weed wacker, etc.

10.     In late June of 2009, the Cardosos' tenant called Mr. Cardoso in a panic indicating that he had been untruthful when he told the tenant that she could rent the house as long as she wanted, as three men had just shown up from BOA to foreclose, clean out the house and place padlocks on all the doors.

11.     The tenant put Mr. Cardoso on the phone with one of the workers.  Mr. Cardoso implored the worker to stop and double check what they were doing, telling him that he had no loan with Countrywide or BOA and that he owned the house free and clear of any mortgages. The worker indicated that he would call his "boss."

12.     Mr. Cardoso also talked to Jason Garcia, the real estate agent BOA had hired to

list the foreclosed house for sale.  The realtor indicated that he was going to alert the bank about the fact that they were foreclosing on the wrong home.  The realtor contacted BOA to advise it that it was foreclosing on the wrong home.  Mr. Cardoso believed the problem had been taken care of, as he had asked, because he received no additional contact from BOA.

13.     Unknown to the Cardosos and all of which they learned after the fact, BOA had not stopped the foreclosure.  In August, BOA had hired a landscaping service to cut the grass at the property.  The lawnmowers were too large for the gate on the Cardosos' fence so the landscaper broke the fence to get the mowers into the backyard.

14.     The Cardosos' tenant was intimidated by the foreclosure proceedings and started looking for a new rental, which she secured in December.  She moved out just before Christmas.

15.     On January 5th, the Cardosos' family friend met the tenant at the property to assist her in obtaining her remaining possessions from the house.  When the Cardosos' family friend arrived at the house, workers hired by BOA were there putting locks on all the doors.  The workers told the family friend that the house now belonged to BOA.

16.     The family friend called Mr. Cardoso to tell him that his house had been seized by BOA.  Confused as to how this could all be happening, Mr. Cardoso immediately called the tax assessor for Spring Hill to ask if his taxes were paid.  The tax collector indicated that his property taxes had been paid by Countrywide.  The tax collector gave Mr. Cardoso a telephone number for Countrywide, which had been bought by BOA by that time.

17.     On the same day, January 5, 2010, Mr. Cardoso called Countrywide.  He was on the phone with them for approximately two hours.  A Countrywide/BOA representative eventually told him that BOA had made a mistake, they were going to fix the problem and that he

4

would call Mr. Cardoso back in one hour.

18.     Countrywide/BOA never called Mr. Cardoso back that day or any day thereafter.
They did not fix the problem.  The locks remained on the house.

19.     On January 7, 2010, after BOA failed to even call him back, Mr. Cardoso had his
son drive him to Florida so he could try to gain access to his house.  Mrs. Cardoso's son was
returning from his third tour of duty in Iraq with two weeks leave at this time.  The Cardosos had
to cancel his homecoming to deal with the seizure of the Florida property.  Mr. Cardoso could
not be there at the airport to greet him when he arrived home, as he had done on the two prior
occasions.

20.     Upon arriving in Florida, Mr. Cardoso called the local police who advised him not
to remove the locks to the house and that he had to prove that he owned the house before he
could go on the property.

21.     The next day, January 9, 2010, Mr. Cardoso was able to convince the police to
allow him to enter his own home.  He immediately went to Lowe's to buy a bolt cutter.  Upon
arriving at his house, he cut all the locks off the doors and had to break into the back screen door
to get in.

22.     When inspecting the house and property after gaining access, he realized that
BOA had removed the Cardosos' possessions from the house, garage and screened in porch when
it "trashed out" the property after seizing it, with the exception of the items stored in the attic
which were apparently were not found by BOA.  He also became aware that both the electricity
and the water had been shut-off causing pipes to freeze, his pool pump to shut-down and his
automatic sprinkler system from working, as evidenced by the brown patches in the lawn.  He

also observed tire tracks on his lawn where a truck must have driven on the property.  BOA has

not returned the Cardosos' personal possessions and they are presumed destroyed.

## COUNT 1
**Trespass**
**(Vicarious Liability As to BOA)**

23.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

24.     The Defendant, its agents, contractors and/or employees entered the Plaintiffs'

property and house without permission or authorization at various times during its "foreclosure"

process and proceedings.

25.     The Defendant, its agents, contractors and/or employees were on notice that they

had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their

home and property and remove possessions in the home and garage and on the property.

26.     The actions of the Defendant, its agents, contractors and/or employees were done

intentionally and/or with gross disregard for the rights of the Cardosos.

27.     The Plaintiffs were damaged as a direct and proximate result of the actions of the

Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further

request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple

damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-

judgment interest on any award.

## COUNT 2
**Trespass**

**(As to John Does 1-5)**

28.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

29.     The Defendant's yet unknown agents, contractors and/or employees entered the Plaintiffs' property and house without permission or authorization at various times during its "foreclosure" process and proceedings.

30.     The Defendant and/or its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.

31.     The actions of the Defendant's agents, contractors and/or employees were done intentionally and/or with gross disregard for the rights of the Cardosos.

32.     The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendant's agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

**COUNT 3**
**Conversion**
**(Vicarious Liability As to BOA)**

33.     The Plaintiff re-allege the above paragraphs as if fully set forth in this Count.

34.     The Defendant, its agents, contractors and/or employees entered the Plaintiffs' property and house without permission or authorization at various times during its "foreclosure" process and proceedings.

7

35.     The Defendant, its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.

36.     The Defendant, its agents, contractors and/or employees removed and disposed of numerous possessions of the Plaintiffs, only some of which are itemized above.  The actions of the Defendant, its agents, contractors and/or employees were done intentionally and/or with gross disregard for the rights of the Cardosos.

37.     The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre- and post-judgment interest on any award.

### COUNT 4
### Conversion
### (As to John Does 1-5)

38.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

39.     The Defendant's yet unknown agents, contractors and/or employees entered the Plaintiffs' property and house without permission or authorization at various times during its "foreclosure" process and proceedings.

40.     The Defendant and/or Defendant's agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the

property.

41.     The Defendant's agents, contractors and/or employees removed and disposed of numerous possessions of the Plaintiffs, only some of which are itemized above.  The actions of the Defendant's agents, contractors and/or employees were done intentionally and/or with gross disregard for the rights of the Cardosos.

42.     The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre- and post-judgment interest on any award.

### COUNT 5
### Negligence
### (Vicarious Liability As to BOA)

43.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

44.     The Defendant BOA owed a duty to the Plaintiffs to act as a reasonable and prudent lender during any foreclosure proceedings, which included the obligation to verify that it was foreclosing on the correct house.

45.     The Defendant, its agents, contractors and/or employees entered the Plaintiffs' property and house without permission or authorization at various times during its "foreclosure" process and proceedings.

46.     The Defendant, its agents, contractors and/or employees were on constructive and actual notice through public property records and direct contact that they had no right or authority

to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.

47.     Moreover, once the Defendant and/or its agents, contractors and/or employees were on notice that it had trespassed on the Plaintiffs' property when trying to place locks on the doors and that it was foreclosing on the wrong home, the Defendants had a duty of reasonable care to investigate and correct any potential wrongful actions/foreclosure.

48.     The Defendants breached the duty it owed to the Plaintiffs by foreclosing on the wrong home and continuing the wrongful foreclosure after notice, seizing the plaintiff's house and throwing out the Plaintiffs' possessions.

49.     The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre- and post-judgment interest on any award.

## COUNT 6
### Negligence
### (As to John Does 1-5)

50.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

51.     The Defendant BOA owed a duty to the Plaintiffs to act as a reasonable and prudent agents/lenders during any foreclosure proceedings, which included the obligation to verify that it was foreclosing on the correct house.

52.     The Defendant's agents, contractors and/or employees entered the Plaintiff's

property and house without permission or authorization at various times during its "foreclosure" process and proceedings.

53.     The Defendant's agents, contractors and/or employees were on constructive and actual notice through public property records and direct contact that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.

54.     Moreover, once the Defendant and/or its Defendant's agents, contractors and/or employees were on notice that they had trespassed on the Plaintiffs' property when trying to place locks on the doors and that it was foreclosing on the wrong home, the Defendants had a duty of reasonable care to investigate and correct any potential wrongful actions/foreclosure.

55.     The Defendants breached the duty they owed to the Plaintiffs by foreclosing on the wrong home and continuing the wrongful foreclosure, seizing the Plaintiffs' house and throwing out the Plaintiffs' possessions.

56.     The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre- and post-judgment interest on any award.

**COUNT 7**
**Negligent Infliction of Emotional Distress**
**(Vicarious Liability as to BOA)**

57.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

58.     The Defendant BOA owed a duty to the Plaintiffs to act as a reasonable and prudent lender during any foreclosure proceedings, which included the obligation to verify that it was foreclosing on the correct house.

59.     The Defendant, its agents, contractors and/or employees entered the Plaintiffs' property and house without permission or authorization at various times during its "foreclosure" process and proceedings.

60.     The Defendant, its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.

61.     Moreover, the Defendant and/or its agents, contractors and/or employees were on notice that it had trespassed on the Plaintiffs' property when trying to place locks on the doors and that it was foreclosing on the wrong home, the Defendants had a duty of reasonable care to investigate and correct any potential wrongful actions/foreclosure.

62.     The Defendants breached the duty it owed to the Plaintiffs by foreclosing on the wrong house and continuing the wrongful foreclosure, seizing the Plaintiffs' house and throwing out the Plaintiffs' possessions.

63.     The Defendants actions were taken with a gross disregard for the Plaintiffs' rights and were so severe and outrageous so as to shock the conscience and cause the Plaintiffs severe emotional distress, embarrassment and ridicule.

64.     The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendant, its agents, contractors and/or employees.  In the case of Mr. Cardoso, his emotional

12

distress includes, but is not limited to, extreme humiliation in front of relatives and friends, anxiety attacks, loss of sleep, a near fainting episode and an increase in prescription medication dosages, as ordered by his doctor to control his increased anxiety.  In the case of Mrs. Cardoso, her emotional distress has manifested in the form of extreme humiliation in front of relatives and friends, loss of sleep, crying episodes and an increase in prescription medication dosages, as ordered by her doctor to control her increased anxiety.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre- and post-judgment interest on any award.

**COUNT 8**
**Negligent Infliction of Emotional Distress**
**(As to John Does 1-5)**

65.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

66.     The Defendant BOA, its agents, contractors and/or employees owed a duty to the Plaintiffs to act as a reasonable and prudent lender during any foreclosure proceedings, which included the obligation to verify that it was foreclosing on the correct house.

67.     The Defendant's agents, contractors and/or employees entered the Plaintiffs' property and house without permission or authorization at various times during its "foreclosure" process and proceedings.

68.     The Defendant, its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.

69.     Moreover, once the Defendant and/or its agents, contractors and/or employees were on notice that it had trespassed on the Plaintiffs' property when trying to place locks on the doors and that it was foreclosing on the wrong home, the Defendants had a duty of reasonable care to investigate and correct any potential wrongful actions/foreclosure.

70.     The Defendants breached that duty by foreclosing on the wrong home and continuing the wrongful foreclosure, seizing the Plaintiffs' house and throwing out the Plaintiffs' possessions.  The Defendants actions were taken with a gross disregard for the Plaintiffs' rights and were so severe and outrageous so as to shock the conscience and cause the Plaintiffs' severe emotional distress, embarrassment and ridicule.

71.     The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendant, its agents, contractors and/or employees.  In the case of Mr. Cardoso, his emotional distress includes, but is not limited to, extreme humiliation in front of relatives and friends, anxiety attacks, loss of sleep, a fainting episode and an increase in prescription medication dosages, as ordered by his doctor to control his increased anxiety.  In the case of Mrs. Cardoso, her emotional distress has manifested in the form of extreme humiliation in front of relatives and friends, loss of sleep, crying episodes and an increase in prescription medication dosages, as ordered by her doctor to control her increased anxiety.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre- and post-judgment interest on any award.

**COUNT 9**

14

### Intentional Infliction of Emotional Distress
### (Vicarious Liability as to BOA)

72.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

73.     The Defendant, its agents, contractors and/or employees entered the Plaintiffs'

property and house without permission or authorization at various times during its "foreclosure"

process and proceedings.

74.     The Defendant, its agents, contractors and/or employees were on notice that they

had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their

home and property and remove possessions in the home and garage and on the property.

75.     The Defendant's acts and/or omissions were done intentionally and/or with gross

indifference to the Plaintiffs' rights and constitute outrageous conduct.

76.     The Plaintiffs were damaged as a direct and proximate result of the actions of the

Defendant, its agents, contractors and/or employees.  In the case of Mr. Cardoso, his emotional

distress includes, but is not limited to, extreme humiliation in front of relatives and friends,

anxiety attacks, loss of sleep, a fainting episode and an increase in prescription medication

dosages, as ordered by his doctor to control his increased anxiety.  In the case of Mrs. Cardoso,

her emotional distress has manifested in the form of extreme humiliation in front of relatives and

friends, loss of sleep, crying episodes and an increase in prescription medication dosages, as

ordered by her doctor to control her increased anxiety.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further

request that they be awarded damages in an amount to be proven at trial, punitive damages and/or

multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-

and post-judgment interest on any award.

## COUNT 10
### Intentional Infliction of Emotional Distress
### (As to John Does 1-5)

77.      The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

78.      The Defendant's its agents, contractors and/or employees entered the Plaintiffs'

property and house without permission or authorization at various times during its "foreclosure"

process and proceedings.

79.      The Defendant's agents, contractors and/or employees were on notice that they

had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their

home and property and remove possessions in the home and garage and on the property.

80.      The Defendants' acts and/or omissions were done intentional and/or with gross

indifference to the Plaintiffs' rights and constitute outrageous conduct.

81.      The Plaintiffs were damaged as a direct and proximate result of the actions of the

Defendant, its agents, contractors and/or employees.  In the case of Mr. Cardoso, his emotional

distress includes, but is not limited to, extreme humiliation in front of relatives and friends,

anxiety attacks, loss of sleep, a fainting episode and an increase in prescription medication

dosages, as ordered by his doctor to control his increased anxiety.  In the case of Mrs. Cardoso,

her emotional distress has manifested in the form of extreme humiliation in front of relatives and

friends, loss of sleep, crying episodes and an increase in prescription medication dosages, as

ordered by her doctor to control her increased anxiety.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further

request that they be awarded damages in an amount to be proven at trial, punitive damages and/or

16

multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-
and post-judgment interest on any award.

### COUNT 11
### Interference with Contractual Relations
### (As to BOA)

82.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

83.     Prior to BOA's foreclosure proceedings, the Plaintiffs had a lease with their tenant
for the yearly rental of their home.

84.     BOA intentionally and/or with gross disregard for the Plaintiffs' rights proceeded
to foreclose on the Plaintiffs' home when BOA knew or should have known it was foreclosing on
the wrong house.  Both BOA's motive and means were improper as it had no legal right to
foreclose on the property.

85.     BOA's reckless and intentional acts and omissions in foreclosing on the Plaintiffs'
home, intimidated the tenant into vacating the premises, interfered with the Plaintiffs' lease with
their tenant and resulted in an empty house which BOA could secure and "trash out."

86.     The Plaintiffs do not have a tenant and have lost past and potential future rental
income on the house as a direct and proximate result of the acts and omissions of BOA.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further
request that they be awarded damages in an amount to be proven at trial, punitive damages and/or
multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-
and post-judgment interest on any award.

### COUNT 12
### Defamation

17

**(As to BOA)**

87.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

88.     The Defendant BOA and/or its employees and agents made statements to third-parties that the Plaintiffs had not paid their mortgage debt, that the Plaintiff's house was in foreclosure and that BOA owned the house.  These statements were made to BOA's employees, agents, contractors and/or to third persons including the Plaintiffs' family friend who maintained the house for the Plaintiffs, and the Cardosos' tenant.  Said statements formed the basis on which BOA's employees, agents and/or contractors proceeded to foreclose on the Plaintiffs' home, publically seize their house, change the locks and "trash out" the Plaintiffs' house, resulting in the disposal of their personal property.

89.     Said statements were false, BOA knew the statements to be false and said statements were made with reckless and/or negligent disregard for the truth.

90.     The false and defamatory statements made by BOA, its employees and/or agents caused damage to the Plaintiffs' reputation, good name and honor in their community and before their family, friends and tenant, some of whom reside in Florida near their property.  Moreover, said false and defamatory statements have caused the Plaintiffs emotional distress which has resulted in physical symptoms and an increase in their anxiety prescription medication dosages. In addition, the false and defamatory statements resulted in the intimidation and departure of the Plaintiffs' tenant who was a good tenant who paid the rent.  Accordingly, the Plaintiffs have lost past and potential future rental income.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive damages and/or

multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-
and post-judgment interest on any award.

## COUNT 13
### Libel
### (As to BOA)

91.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

92.     The Defendant BOA and/or its employees and agents made written statements to
third-parties that the Plaintiffs had not paid their mortgage debt and that the Plaintiffs' house was
in foreclosure.  These included, but were not limited to, written communications with its
employees, real estate agent and contractors that the Plaintiffs had not paid their mortgage and
the house was in foreclosure.  Said written statements formed the basis on which BOA's
employees, agents and/or contractors proceeded to foreclose on the Plaintiff's home, publically
seize their house, change the locks and "trash out" the Plaintiff's house, resulting in the disposal
of their personal property.

93.     Moreover, as part of BOA's foreclosure process and procedures, it posts a "no
entry" sign at the premises prohibiting "unauthorized persons" from entering.  The sign is posted
"[t]o protect the interest of the lender and in accordance with the terms of the security
instrument."  Based on BOA's practices and procedures, it is believed that such a sign was
posted at the Plaintiffs premises.

94.     Said written statements were false, BOA knew the statements to be false and said
statements were made with reckless and/or negligent disregard for the truth.

95.     The false and defamatory written statements made by BOA, its employees and/or
agents caused damage to the Plaintiffs' reputation, good name and honor in their community and

19

before their family and friends, some of whom reside in Florida near their property.  Moreover,

said false and defamatory statements have caused the Plaintiffs emotional distress which has

resulted in physical symptoms and an increase in their prescription dosages.  In addition, the false

and defamatory statements resulted in the intimidation and departure of the Plaintiffs' tenant who

was a good tenant who paid the rent.  Accordingly, the Plaintiffs have lost past and potential

future rental income.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further

request that they be awarded damages in an amount to be proven at trial, punitive damages and/or

multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-

and post-judgment interest any award.

## COUNT 14
### Invasion of Privacy
### (Vicarious Liability As to BOA)

96.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

97.     The Plaintiffs owned the property and home located at 9168 Geneva Street, Spring

Hill, Florida.  Despite having a tenant in the property for part of the Defendants' wrongful

foreclosure process, the Plaintiffs also stored their personal possessions in the house, the garage

and on the property.  The Plaintiffs also were responsible for maintaining the property for the

tenant and maintained at the property items, tools, and equipment which belonged to the

Plaintiffs.  Due to the Defendants' wrongful foreclosure, its false statements and its entry onto

the property, the Plaintiffs' tenant moved out of the house just prior to Christmas, thereby ending

her tenancy.

98.     The Plaintiffs, as the owners of 9168 Geneva Street, had a right to privacy in their

property and house.  The Plaintiffs had the right to be free from unlawful intrusion onto their

property and into their home and also from the unauthorized viewing, taking, seizure and

destruction of their personal property within their home and on their property.

99.     The Defendant, its agents, contractors and/or employees entered the Plaintiffs'

property and house without permission or authorization at various times during its "foreclosure"

process and proceedings and viewed, took and destroyed their personal property and possessions.

100.    The Defendant, its agents, contractors and/or employees were on notice that they

had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their

home and property and remove/dispose of their personal property and possessions in the home

and garage and on the property.  The acts of the Defendant, its agents, contractors and/or

employees were an  unreasonable, substantial and/or serious interference with the Plaintiffs'

privacy.

101.    The actions of the Defendant, its agents, contractors and/or employees were done

intentionally and/or with gross disregard for the rights of the Cardosos and constituted an

invasion of the Plaintiffs' right to privacy.

102.    In addition, the Defendant, its agents, contractors and/or employees held the

Plaintiffs out to the public in a false light by representing through their words and actions that the

Plaintiffs had a mortgage with BOA, that the Plaintiffs had not paid their mortgage and that their

home was subject to foreclosure by BOA.  All of these direct or implied representations about the

Plaintiffs were false and constituted an invasion of their privacy.  These acts were an

unreasonable, substantial and/or serious interference with the Plaintiffs' privacy.

103.    The Plaintiffs were damaged as a direct and proximate result of the acts and

omissions of the Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

## COUNT 15
### Invasion of Privacy
### (As to John Does 1-5)

104.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

105.     The Plaintiffs owned the property and home located at 9168 Geneva Street, Spring Hill, Florida.  Despite having a tenant in the property for part of the Defendants' wrongful foreclosure process, the Plaintiffs also stored their personal possessions in the house, the garage and on the property.  The Plaintiffs also were responsible for maintaining the property for the tenant and maintained at the property items, tools, and equipment which belonged to the Plaintiffs.  Due to the Defendants  wrongful foreclosure, the defendant's false statements and the defendants entry onto the property, the Plaintiff's  tenant moved out of the house just prior to Christmas, thereby ending her tenancy.

106.     The Plaintiffs, as the owners of 9168 Geneva Street, had a right to privacy in their property and house.  The Plaintiffs had the right to be free from unlawful intrusion onto their property and into their home and also from the unauthorized viewing, taking, seizure and destruction of their personal property within their home and on their property.

107.     The Defendant's yet unknown agents, contractors and/or employees entered the Plaintiffs' property and house without permission or authorization at various times during its

"foreclosure" process and proceedings and viewed, took and destroyed their personal property and possessions.

108.    The Defendant and/or its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove/dispose of their personal property and possessions in the home and garage and on the property.  The acts of the Defendant, its agents, contractors and/or employees were an unreasonable, substantial and/or serious interference with the Plaintiffs' privacy.

109.    The actions of the Defendant's agents, contractors and/or employees were done intentionally and/or with gross disregard for the rights of the Cardosos and constituted an invasion of the Plaintiffs' right to privacy.

110.    In addition, the Defendant, its agents, contractors and/or employees held the Plaintiffs out to the public in a false light by representing through their words and actions that the Plaintiffs had a mortgage with BOA, that the Plaintiffs had not paid their mortgage and that their home was subject to foreclosure by BOA.  All of these direct or implied representations about the Plaintiffs were false and constituted an invasion of their privacy.  These acts were an unreasonable, substantial and/or serious interference with the Plaintiffs' privacy.

111.    The Plaintiffs were damaged as a direct and proximate result of the actions of the Defendant's agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-

judgment interest on any award.

## COUNT 16
### Violations of the Massachusetts Civil Rights Act
### (Vicarious Liability As to BOA)

112.    The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

113.    The Plaintiffs owned the property and home located at 9168 Geneva Street, Spring Hill, Florida.  Despite having a tenant in the property for part of the Defendants' wrongful foreclosure process, the Plaintiffs also stored their personal possessions in the house, the garage and on the property.  The Plaintiffs also were responsible for maintaining the property for the tenant and maintained at the property items, tools, and equipment which belonged to the Plaintiffs.  Due to the Defendant's wrongful foreclosure, the Defendant's false statements and the Defendant's entry onto the property, the Plaintiff's tenant moved out of the house just prior to Christmas, thereby ending her tenancy.

114.    The Plaintiffs had a right of privacy in their home and property, a right to possess the property free from intrusions by others and a right to lease the property to a tenant if they so chose.

115.    The Defendant, its agents, contractors and/or employees broke and entered into the Plaintiffs' home, trespassed on their property and disposed of the Plaintiffs' possessions that were on the property and in the home and garage.  In addition, as part of the invasion of the Plaintiffs' home by the Defendant, its agents, contractors and/or employees, said Defendant, its agents, contractors and/or employees took total possession of the home by changing the locks. These acts were taken to dispossess the Plaintiffs of the ownership interest and other rights they

had in their home and property.

116.     The Defendant, its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.  The actions of the Defendant, its agents, contractors and/or employees were done with gross disregard for the Plaintiffs' rights and constituted threats, intimidation and/or coercion in violation of the Plaintiffs' civil rights.

117.     The Plaintiffs were damaged as a direct and proximate result of the acts and omissions of the Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

_____

**COUNT 17**
**Violations of the Massachusetts Civil Rights Act**
**(As to John Does 1-5)**

118.     The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

119.     The Plaintiffs owned the property and home located at 9168 Geneva Street, Spring Hill, Florida.  Despite having a tenant in the property for part of the Defendants' wrongful foreclosure process, the Plaintiffs also stored their personal possessions in the house, the garage and on the property.  The Plaintiffs also were responsible for maintaining the property for the

tenant and maintained at the property items, tools, and equipment which belonged to the Plaintiffs.  Due to the Defendants' wrongful foreclosure, the Defendants' false statements and the Defendants' entry onto the property, the Plaintiff's tenant moved out of the house just prior to Christmas, thereby ending her tenancy.

120.    The Plaintiffs had a right of privacy in their home and property, a right to possess the property free from intrusions by others and a right to lease the property to a tenant if they so chose.

121.    The Defendants broke and entered into the Plaintiffs' home, trespassed on their property and disposed of the Plaintiffs' possessions that were on the property and in the home and garage.  In addition, as part of the invasion of the Plaintiffs' home by the Defendants, said Defendants took total possession of the home by changing the locks.  These acts were taken to dispossess the Plaintiffs of the ownership interest and other rights they had in their home and property.

122.    The Defendants were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.

123.    The actions of the Defendants were done with gross disregard for the Plaintiffs' rights and constituted threats, intimidation and/or coercion in violation of the Plaintiffs' civil rights.

124.    The Plaintiffs were damaged as a direct and proximate result of the acts and omissions of the Defendants.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further

26

request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

### COUNT 18
**Violations of Florida Consumer Protection Statute**
**(Vicarious Liability as to BOA)**

125.    The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

126.    The Plaintiffs owned the property and home located at 9168 Geneva Street, Spring Hill, Florida.  Despite having a tenant in the property for part of the Defendants' wrongful foreclosure process, the Plaintiffs were responsible for the maintenance of the property and house and stored possessions in the house, the garage and on the property.  Due to the Defendants' wrongful foreclosure, the Plaintiffs' tenant moved out of the house just prior to Christmas, ending her tenancy.

127.    The Plaintiffs had a right of privacy in their home and property, a right to possess the property free from intrusions by others and a right to lease the property to a tenant if they so chose.

128.    The Defendants, its agents, contractors and/or employees were all engaged in trade and/or commerce as that term is used in the consumer protection statute as they were all involved in the business of foreclosing on residential properties to either obtain BOA's alleged security interest or to be paid compensation as an agent, contractor or employee.

129.    The Defendant, its agents, contractors and/or employees broke and entered into the Plaintiffs' home, trespassed on their property and disposed of the Plaintiffs' possessions that were on the property and in the home and garage.  In addition, as part of the invasion of the

Plaintiffs' home by the Defendant, its agents, contractors and/or employees, said Defendant, its agents, contractors and/or employees took total possession of the home by changing the locks. These acts were taken to dispossess the Plaintiffs of the ownership interest and other rights they had in their home and property.

130.    The Defendant, its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.  It is an unfair and deceptive act and practice for BOA to publicly foreclose on a home, seize the home and "trash out" the homeowner's possessions when it has no legal right to do so, especially when it has had notice that it is foreclosing on the wrong home.

131.    In addition, BOA has demonstrated a policy and/or practice of foreclosing on homes to which it has no legal right to possess.

132.    BOA lacks an adequate policy or practice to verify that it is foreclosing on a home to which it has a legally valid security interest, to timely stop wrongful foreclosures from happening after receiving notice and to timely address homeowners' concerns after being locked out in a wrongful foreclosure.

133.    The Defendant, its agents, contractors and/or employees have wrongfully foreclosed and/or taken personal property from the homes of other homeowners, without authorization or legal privilege, in Texas, Massachusetts (two other known occasions), Nevada and Kentucky.

134.    It is an unfair and deceptive act and/or practice for the Defendant BOA not to have an adequate system in place to verify the legality of its security interest prior to instituting

foreclosure proceedings, to stop wrongful foreclosures from proceeding and to timely address homeowners' concerns after being locked out in a wrongful foreclosure, especially when it is on notice of similar wrongful foreclosures in different states.

135.    The actions of the Defendant, its agents, contractors and/or employees were done with gross disregard for the Plaintiffs' rights and constituted unfair and deceptive acts and practices in violation of the Florida consumer protection statute.

136.    The Plaintiffs were damaged as a direct and proximate result of the acts and omissions of the Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

## COUNT 19
### Violations of Florida Consumer Protection Statute
### (As to John Does 1-5)

137.    The Plaintiffs re-allege the above paragraphs as if fully set forth in this Count.

138.    The Plaintiffs owned the property and home located at 9168 Geneva Street, Spring Hill, Florida.  Despite having a tenant in the property for part of the Defendants' wrongful foreclosure process, the Plaintiffs were responsible for the maintenance of the property and house and stored possessions in the house, the garage and on the property.  Due to the Defendants' wrongful foreclosure, the Plaintiffs' tenant moved out of the house just prior to Christmas, ending her tenancy.

139.    The Plaintiffs had a right of privacy in their home and property, a right to possess

29

the property free from intrusions by others and a right to lease the property to a tenant if they so chose.

140.    The Defendants, its agents, contractors and/or employees were all engaged in trade and/or commerce as that term is used in the consumer protection statute as they were all involved in the business of foreclosing on residential properties to either obtain BOA's alleged security interest or to be paid compensation as an agent, contractor or employee.

141.    The Defendant, its agents, contractors and/or employees broke and entered into the Plaintiffs' home, trespassed on their property and disposed of the Plaintiffs' possessions that were on the property and in the home and garage.  In addition, as part of the invasion of the Plaintiffs' home by the Defendant, its agents, contractors and/or employees, said Defendant, its agents, contractors and/or employees took total possession of the home by changing the locks. These acts were taken to dispossess the Plaintiffs of the ownership interest and other rights they had in their home and property.

142.    The Defendant, its agents, contractors and/or employees were on notice that they had no right or authority to enter onto the Plaintiffs' property, break into their home, seize their home and property and remove possessions in the home and garage and on the property.  It is an unfair and deceptive act and practice for BOA to publicly foreclose on a home, seize the home and "trash out" the homeowner's possessions when it has no legal right to do so, especially when it has had notice that it is foreclosing on the wrong home.

143.    In addition, BOA has demonstrated a policy and/or practice of foreclosing on homes to which it has no legal right to possess.

144.    BOA lacks an adequate policy or practice to verify that it is foreclosing on a home

to which it has a legally valid security interest, to timely stop wrongful foreclosures from happening after receiving notice and to timely address homeowners' concerns after being locked out in a wrongful foreclosure.

145.    The Defendant, its agents, contractors and/or employees have wrongfully foreclosed and/or taken personal property from the homes of other homeowners, without authorization or legal privilege, in Texas, Massachusetts (two other known occasions), Nevada and Kentucky.

146.    It is an unfair and deceptive act and/or practice for the Defendant BOA not to have an adequate system in place to verify the legality of its security interest prior to instituting foreclosure proceedings, to stop wrongful foreclosures from proceeding and to timely address homeowners' concerns after being locked out in a wrongful foreclosure, especially when it is on notice of similar wrongful foreclosures in different states.

147.    The actions of the Defendant, its agents, contractors and/or employees were done with gross disregard for the Plaintiffs' rights and constituted unfair and deceptive acts and practices in violation of the Florida consumer protection statute.

148.    The Plaintiffs were damaged as a direct and proximate result of the acts and omissions of the Defendant, its agents, contractors and/or employees.

WHEREFORE, the Plaintiffs request judgment in their favor on this Count and further request that they be awarded damages in an amount to be proven at trial, punitive and/or multiple damages to the extent allowed by the applicable law, attorney's fees and costs and pre-and post-judgment interest on any award.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON THIS MATTER**

Respectfully submitted
On behalf of the Plaintiffs,

/ s /   Joseph F. deMello
_____

Joseph F. deMello
BBO# 546017
LAW OFFICE of JOSEPH F. deMELLO, P.C.
71 Main Street
Taunton, MA 02747
508-824-9112
508-824-5917 (fax)
josephdemellolaw@verizon.net


/ s / Carlin J. Phillips
_____

Carlin J. Phillips
BBO# 561916
PHILLIPS & GARCIA, P.C.
13 Ventura Drive
N. Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 (fax)
cphillips@phillipsgarcia.com


Dated:   February 10, 2010